PER CURIAM.
This disciplinary proceeding is before the Court on respondent’s petition for review of the report of a referee. The Board of Governors of The Florida Bar has concurred in the referee’s findings and recommendations. Our jurisdiction is provided for by article V, section 15, Florida Constitution.
In the latter part of 1974 respondent, a member of The Florida Bar, brought together a number of investors for the purpose of acquiring three parcels of real property in North Carolina. Respondent’s objective was to raise enough cash to acquire a purchase option held by one Whittles, to discharge a federal income tax lien, and to pay the owner for his equity. Anthony DeLucca invested $35,000 in this scheme, with the understanding that he would acquire title to one of the parcels. The agreement between DeLucca and respondent is evidenced by three written documents. In their first agreement, the referee reports, respondent “acknowledged that he was in the process of purchasing the Property and that with respect to the parcel being purchased by DeLucca, Respondent acknowledged that DeLucca was the beneficial purchaser, that DeLucca’s purchase price would be $30,000 plus ‘one-third of an agreed attorney’s fee to be established under a separate agreement.’ ” The first agreement was accompanied by a $7,500 payment by DeLucca which was to be returned if respondent should fail to deliver title. The second document reflects an agreement by DeLucca to pay respondent $5,000 as “agreed attorney’s fee and costs” which was to be paid upon delivery of a warranty deed to DeLucca.
The signing of the third written document was accompanied by a payment of $27,500 to respondent. Thus the agreement in its totality contemplated DeLucca’s paying $30,000 for the parcel and $5,000, although denominated as an amount for an attorney’s fee and costs, as profit for respondent. In the third written document respondent agreed that the proceeds of this final payment of $27,500 would be used to obtain the discharge of the income tax lien. The agreement provided further:
In the event the application for certificate of discharge shall not be secured prior to May 1, 1975 and a good and insurable deed tendered and recorded to the said Anthony Charles DeLucca, the total sum of $35,000 shall be returned to him and this matter concluded.
Instead of devoting the money received from DeLucca to the discharge of the tax lien, the respondent used part of it to acquire the purchase option held by Whittles. As holder of this purchase option, the referee determined, respondent would have the right to redeem the parcels subject to lien within 120 days following their sale at public auction.
By September of 1975 it had become apparent that the income tax lien could not be settled for the amount previously estimated by respondent. In January, 1976, the Internal Revenue Service put the parcels up for auction. The high prices that were bid on the parcels precluded the respondent from obtaining them by purchase or by redemption within 120 days. Thus the speculative scheme never came to fruition and substantial losses were incurred by the respondent, DeLucca, and another investor. The respondent returned $15,000 to DeLucca with interest and has demonstrated willingness and ability to make him whole by returning the remaining $20,000 with interest.
The complaint of The Florida Bar charged respondent with violation of Flori *685 da Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A), (4) and (6),[1] 7-101(A), (2) and (3),[2] and 9-102(B)(4)[3] and Florida Bar Integration Rule, article XI, Rule 11.02(3)(a) and (4).[4]
The referee found that there was no attorney-client relationship between respondent and DeLucca in connection with this speculative transaction. DeLucca did not rely on respondent for legal or business advice, but rather related to him as one businessman to another. The referee concluded, therefore, that there was no violation of disciplinary rules 7-101(A), (2) or (3) or 9-102(B)(4). The report contains no conclusion as to the charged violation of Integration Rule 11.02(4).
As to the charged violations of disciplinary rule 1-102(A), (4) and (6) and Integration Rule 11.02(3)(a), the referee recommended finding the respondent guilty based on the following conclusions:
His conduct in the promotion of the real estate transactions, his acceptance of monies from DeLucca for one purpose and the use of same for another, his commingling of funds received from different purposes and the use of same to promote his own business objectives, his failure to return to DeLucca the $20,000 unpaid balance when the deal could not be consummated according to its original terms, constitute conduct that involves dishonesty, deceit or misrepresentation, and adversely reflects on his fitness' to practice law. Without any question of a doubt his moral conduct was not within the moral standards set by Rule 11.- *686 02(3)(a) because his acts were contrary to justice and good morals.
The referee’s findings of fact are supported by clear and convincing evidence. The recommended finding that respondent’s conduct was contrary to the ethical standards required of an attorney is approved and adopted.
The referee recommended that respondent be privately reprimanded and that he be suspended from the practice of law for sixty days with reinstatement thereafter being conditioned upon restitution to De-Lucca. We decline to impose the recommended discipline.
It is the judgment of this Court that the respondent receive a public reprimand by the publication of this order, and further that he bear the costs of these proceedings in the amount of $ 1.582.75 .
It is so ordered.
OVERTON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
BOYD, Acting C. J., dissents with an opinion.

. DR 1-102. Misconduct
(A) A lawyer shall not:
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

. DR 7-101. Representing a Client Zealously
(A) A lawyer shall not intentionally:
(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).

. DR 9-102. Preserving Identity of Funds and Property of a Client
(B) A lawyer shall:
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

. Rule 11.02: Breaches of Discipline
(3) Moral conduct.
(a) Standards. The standards of professional conduct to be observed by members of the Bar are not limited to the observance of rules and avoidance of prohibitive acts, and the enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof. The commission by a lawyer of any act contrary to honesty, justice or good morals, whether the act is committed in the course of his relations as an attorney or otherwise, whether committed within or outside the State of Florida, and whether or not the act is a felony or misdemeanor, constitutes a cause for discipline.
(4) Trust funds and fees. Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or set-off for attorney fees, and a refusal to account for and deliver over such property and money upon demand shall be deemed a conversion. This is not to preclude the retention of money or other property upon which the lawyer has a valid lien for his services or to preclude the payment of agreed fees from the proceeds of transactions or collections. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate or the demand is fraudulent.
In a controversy alleging a clearly excessive, extortionate or fraudulent fee, announced willingness of an attorney to submit a dispute as to the amount of a fee to a competent tribunal for determination may be considered in any determination as to intent or in mitigation of discipline; provided such willingness shall not preclude admission of any other relevant admissible evidence relating to such controversy, including evidence as to the withholding of funds or property of the client, or to other injury to the client occasioned by such controversy.